T.C. Memo. 2018-193

UNITED STATES TAX COURT

WENDELL FALLS DEVELOPMENT, LLC, GREGORY ALAN FERGUSON,
TAX MATTERS PARTNER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket No. 3494-14.                    Filed November 20, 2018.

David M. Wooldridge, Thomas Allen Worth, and Tucker J. Thoni, for

petitioner.

Scott Lyons and Johnny Craig Young, for respondent.

_____

[*]This opinion supplements our previously filed opinion Wendell Falls Dev.,
LLC v. Commissioner, T.C. Memo. 2018-45.

**[\*2]**                        SUPPLEMENTAL MEMORANDUM OPINION

MORRISON, Judge:  We will deny petitioner's June 5, 2018 motion for reconsideration of findings or opinion pursuant to Rule 161 and motion to vacate pursuant to Rule 162.[1]

On April 4, 2018, the Court issued its Memorandum Findings of Fact and Opinion in this case, Wendell Falls Dev., LLC v. Commissioner, T.C. Memo. 2018-45, which we refer to as the opinion.

On April 16, 2018, the Court entered an order and decision in accordance with the opinion.

On June 5, 2018, the petitioner, Gregory Alan Ferguson, filed a motion to reconsider the opinion.  On the same day, he filed a motion to vacate the order and decision.  For the reasons explained below, we deny his motions.

A motion for reconsideration generally will not be granted unless the moving party shows unusual circumstances or substantial error.  Estate of Quick v. Commissioner, 110 T.C. 440, 441 (1998).  Ferguson complains of three alleged errors in the opinion.  He therefore asks us to reconsider the opinion.  Because our

---

[1]Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure.

**[*3]** order and decision entered on April 16, 2018, were in accordance with the

opinion, he urges us to vacate the order and decision.

First, Ferguson contends that the opinion appears to invalidate the fifth

sentence of section 1.170A-14(h)(3)(i), Income Tax Regs. Ferguson's motion

contends in pertinent part:

> The Opinion appears to hold that enhancement to other property
> owned by Petitioner (but not subject to the Easement) in conjunction
> with its charitable gift to Wake County per se disallows the deduction
> associated with the gift. However, as discussed below, the
> Enhancement Regulation provides that enhancement to the value of
> the other property owned by the donor in conjunction with a
> charitable gift does not result in total disallowance of the donor's
> charitable deduction, so long as the enhancement value is less than
> the value of the donated easement. Treas. Reg. § 1.170A-14(h)(3)(i)
> (fifth sentence).

The fifth sentence of the regulation is:

> If the granting of a perpetual conservation restriction after January 14,
> 1986, has the effect of increasing the value of any other property
> owned by the donor or a related person, the amount of the deduction
> for the conservation contribution shall be reduced by the amount of
> the increase in the value of the other property, whether or not such
> property is contiguous. * * *

Contrary to Ferguson's contention, the opinion did not hold that any

enhancement to the value of other property held by the donor results in a total

disallowance. Rather, the Court determined that the value of the easement was

zero because the highest and best use of the 125 acres subject to the easement was

**[*4]** as parkland and because the easement did not prevent the land from being put to its best use.  <u>Wendell Falls Dev., LLC v. Commissioner</u>, at *12-*15.  The Court's holding is not inconsistent with the fifth sentence of the regulation.

Second, Ferguson contends that the opinion appears to invalidate the sixth and seventh sentences of section 1.170A-14(h)(3)(i), Income Tax Regs. Ferguson's motion contends in pertinent part:

> The Opinion appears to hold that the expectation of receiving a substantial financial or economic benefit in conjunction with a charitable gift per se disallows the deduction associated with the gift. However, as discussed below, the Substantial Benefit Regulation provides that taxpayers can receive such substantial financial or economic benefits in conjunction with conservation easement donations without having their deductions disallowed, so long as the value of the substantial benefit received is less than the value of the contributed easement.  Treas. Reg. § 1.170A-14 (h)(3)(i) (sixth sentence).

The sixth and seventh sentences of the regulation are:

> If, as a result of the donation of a perpetual conservation restriction, the donor or a related person receives, or can reasonably expect to receive, financial or economic benefits that are greater than those that will inure to the general public from the transfer, no deduction is allowable under this section.  However, if the donor or a related person receives, or can reasonably expect to receive, a financial or economic benefit that is substantial, but it is clearly shown that the benefit is less than the amount of the transfer, then a deduction under this section is allowable for the excess of the amount transferred over the amount of the financial or economic benefit received or reasonably expected to be received by the donor or the related person. * * *

**[\*5]**   The seventh sentence of the regulation suggests that a deduction is not precluded if the expected benefit to the donor of the easement is demonstrably less than the amount of the transfer.  See sec. 1.170A-14(h)(3)(i), Income Tax Regs. The sentence requires comparison of two variables:  (1) the expected benefit to the donor of the easement and (2) the amount of the transfer.  As relevant to the first variable, the opinion held that "Wendell Falls donated the easement with the expectation of receiving a substantial benefit."  Wendell Falls Dev., LLC v. Commissioner, at \*13.  That means the expected benefit to the donor of the easement is high.  As relevant to the second variable, the Court held that "the value of the easement is zero."  Id. at \*15.  That means the value of the transfer, i.e., the value of the easement, is zero.  It follows that the expected benefit to the donor is greater than the amount of the transfer.  Therefore, the seventh sentence of the regulation does not require the allowance of a deduction.  The opinion is consistent with the sixth and seventh sentences of the regulation.

Third, Ferguson contends that in determining the value of the 125 acres before the easement was granted, the Court erred in determining that the highest and best use of the 125 acres was parkland.  In particular, Ferguson suggests that the opinion is inconsistent with Symington v. Commissioner, 87 T.C. 892, 896-897 (1986), in which we stated:

[*6]   In determining the fair market value of property "The realistic, objective potential uses for property control the valuation thereof." Stanley Works and Subsidiaries v. Commissioner, * * * [87 T.C. 389, 400 (1986)]. See also Olson v. United States, 292 U.S. 246, 255-256 (1934). Thus, in determining the "reasonable and probable use that supports the highest present value" (see p. 896 supra), we focus on "The highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future." Olson v. United States, supra at 255. Moreover, "The fair market value of property is not affected by whether the owner actually has put the property to its highest and best use" (Stanley Works and Subsidiaries v. Commissioner, supra at 400; see also United States v. Meadow Brook Club, 259 F.2d 41, 45 (2d Cir. 1958)), nor whether he ever intends to do so (Akers v. Commissioner, * * * [T.C. Memo. 1984-490, aff'd, 799 F.2d 243 (6th Cir. 1986)]). * * *

Ferguson implies that the highest and best use of the 125 acres was some use other than as parkland and that therefore it should not matter that Wendell Falls intended to use the 125 acres only as parkland.

Ferguson's motion is premised on the theory that the 125 acres would be more valuable as residential and commercial space. But the 125 acres is part of a larger 1,280-acre parcel of property which, except for the 125 acres, was zoned for residential and commercial development. It was objectively reasonable to devote some of the larger parcel to parkland to serve as an amenity for those who would live and work in the residential and commercial buildings. By June 7, 2007, the date the easement was granted, the best place for the parkland was the 125 acres

[*7] burdened by the easement.  In October 2006 the Town of Wendell had approved the planned unit development under which a master-planned community would be constructed around the 125 acres.  In December 2006 the 125 acres had been placed under contract to be sold to Wake County for use as parkland.  Thus, to value the 125 acres as parkland as of June 7, 2007, is not merely to defer to the view of the then owner of the 125 acres, Wendell Falls.  Wendell Falls' plans for the land were locked into place through legally binding obligations.  The objective best use of the 125 acres was as parkland.

The easement therefore restricted the use of the 125 acres to what would have been its most efficient use anyway.  Under the before-and-after method mandated by the regulation in this case, the value of the easement is the amount by which the easement diminished the value of the land.  Sec. 1.170A-14(h)(3)(i), Income Tax Regs.  It is our best judgment that the amount of the diminution was zero.  The value of the easement was therefore zero.

**[\*8]**   To reflect the foregoing,

An order will be issued denying petitioner's June 5, 2018 motion for reconsideration of findings or opinion pursuant to Rule 161 and petitioner's June 5, 2018 motion to vacate order and decision pursuant to Rule 162.